# EXHIBIT 4

|   |   |
|---|---|
|   | THE HONORABLE RICHARD A. JONES |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ABHIJIT BAGAL, | CASE NO. C23-0721-RAJ |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| KSHAMA SAWANT, *et al.*, | |
| Defendants. | |

## I.     INTRODUCTION

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's complaint. Dkt. # 11. Having thoroughly considered the briefing and the relevant record, the Court hereby **GRANTS** the motion for the reasons explained herein.

## II.    BACKGROUND

Plaintiff filed this lawsuit on May 11, 2023, challenging the Seattle City Council's decision to expand its anti-discrimination laws by adding "caste" as a protected class.[1] *See generally* Dkt. # 1. Plaintiff Bagal is a resident of North Carolina who lived in Seattle from 1995 to 1997. Dkt #1 ¶¶ 27–28. Plaintiff brings a First and Fourteenth Amendment challenge to the

---

[1] On February 21, 2023, the Seattle City Council voted to approve Council Bill (CB) 120511 "relating to human rights; including protections against discrimination based on an individual's caste. . ." Ordinance 126767 ("Ordinance").

ORDER - 1

City Ordinance. *See generally id.* Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Dkt. # 11. Defendants argue (1) Plaintiff lacks standing because they fail to allege a cognizable injury; and, in the alternative, (2) their claims fail on the merits. *Id.* at 6–16. Because this matter is resolved on 12(b)(1) grounds, the Court need not address Defendants' 12(b)(6) argument.

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(1), a complaint must be dismissed if the Court determines at any point that it lacks subject matter jurisdiction over the claims asserted. *Intl. Union of Operating Eng'rs. v. Cnty. of Plumas*, 559 F.3d 1041, 1043–44 (9th Cir. 2009). And if a plaintiff lacks standing, the Court lacks subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). A Rule 12(b)(1) challenge may be facial or factual. Fed. R. Civ. P. 12(b)(1), *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, such as this one, a defendant asserts a complaint's allegations are insufficient to confer federal jurisdiction. In reviewing such an attack, the Court assumes all material allegations in the complaint are true. *Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

### IV. DISCUSSION

#### A. Standing

To establish standing, "a plaintiff must show (i) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This must be shown "for each claim that they press and for each form of relief that they seek." *Id.* at 2208. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted). This is not an onerous burden, though, "for on a motion to dismiss we presum[e] that general allegations embrace those specific

ORDER - 2

facts that are necessary to support the claim." *Id.*

Here, Defendants argue Plaintiff lacks standing because their injuries are hypothetical. Dkt. # 11 at 5–8. Plaintiff's complaint alleges two types of injuries arising under the First and Fourteenth Amendments, respectively. The Court reviews them in turn.

### i. *First Amendment Standing*

First, Plaintiff argues that incorporating "caste" into existing anti-discrimination laws *ipso facto* creates a stigma, levelled towards a specific and insular minority group, namely members of the Hindu religion. *See generally* Dkt. # 1, #15. That stigmatization, Plaintiff reasons, violates the First Amendment's command that no laws should exist "respecting an *establishment* of religion, or prohibiting the *free exercise* thereof . . . ." U.S. Const. amend. I. (emphasis added). Ultimately, Plaintiff premises their Free Exercise Clause and Establishment Clause standing on the theory that the word "caste" produces a cognizable injury consisting of prejudice towards the Hindu religion and members thereof.[2] *See generally* Dkt. # 1.

The *prima facie* burden of proof in free exercise cases is upon a plaintiff to demonstrate a burden upon religion. *See School Dist. of Abington v. Schempp,* 374 U.S. 203, 223 (1963). Notably, free exercise jurisprudence draws a distinction between those governmental actions that *actually* burden the exercise of religion, and those that result in the mere exposure to outlooks at odds with the internal perspectives of a religion. *See Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) ("it is necessary in a free exercise case for one to show the *coercive effect* of the enactment as it *operates against him* in the practice of his religion.")

---

[2] The interrelationship of the Establishment Clause and the Free Exercise Clause was first touched upon in *Cantwell v. State of Conn.*, 310 U.S. 296 (1940). According to the Court, "the [First] Amendment embraces two concepts: freedom to *believe* and freedom to *act*." *Id.* at 303–04 (emphasis added and cleaned up). Unsurprisingly, Plaintiff's alleged injuries pattern this distinction. *See* Dkt. # 1 ¶ 13.

ORDER - 3

(emphasis added); *see also Grove v. Mead Sch. Dist. No. 354*, 753 F.3d 1528, 1543 (9th Cir. 1985) (Canby, J., concurring) ("[G]overnmental actions that merely offend or cast doubt on religious beliefs do not on that account violate free exercise. An *actual burden* on the profession or exercise of religion is required.") (emphasis added).

Here, Plaintiff fails to make this *prima facie* showing. Indeed, Plaintiff simply does not allege they are burdened, in any manner, from practicing their faith. *See generally* Dkt. # 1, #13. Furthermore, the plain text of the Ordinance does not lend itself to such an interpretation.[3] Ultimately, the record is devoid of any factual allegations giving rise to a cognizable injury under the Free Exercise Clause. Therefore, having failed to allege a cognizable injury, Plaintiff *de facto* lacks standing to assert a Free Exercise challenge to the Ordinance.

Plaintiff's Establishment Clause claim is similarly unavailing. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially *preferred* over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982) (emphasis added). Fundamentally, Plaintiff's reasoning is that the City of Seattle's involvement on an issue of equal importance to practitioners of a certain religion becomes, as a consequence, activity in favor or opposition to that religion. And that, because the City of Seattle opted to disfavor caste-based forms of discrimination, *a fortiori* it condemned all notions of caste as it was understood by any religion. But that logic proves too much. And even assuming, *arguendo*, that the Ordinance does condemn notions of caste as is believed by a certain religion, that does not constitute activity in support or disparagement of that religion. For instance, birth control is a topic that involves both religious beliefs and general welfare concerns. And yet, no court has ever held that government approval of birth control violates the Establishment Clause. To the contrary.

The Supreme Court summarily rejected an argument that the limiting of Medicaid funds

---

[3] The Ordinance makes it unlawful to discriminate based on caste: (1) in the workplace, (2) in places of public accommodation, (3) in landlord-tenant transactions; (4) in the use or enjoyment of public parks and in other facets of public life. Ordinance 126767.

ORDER - 4

for abortions violated the establishment clause "because it incorporates into law the doctrines of the Roman Catholic Church . . . ." *Harris v. McRae,* 448 U.S. 297, 319 (1980). As the Court has reasoned, "[a]lthough neither a State nor the Federal Government can constitutionally 'pass laws which aid one religion, aid all religions, or prefer one religion over another,'" *id*. (quoting *Everson v. Board of Education*, 330 U.S. 1, 15 (1947)), "it does not follow that a statute violates the Establishment Clause because it 'happens to coincide or harmonize with the tenets of some or all religions.'" *Id.* (quoting *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)).

Similarly, this Court cannot conclude that the Ordinance is unconstitutional under the First Amendment simply because it coincides or otherwise conflicts with a religious tenet. It is not enough, in other words, that the anti-caste legislation strikes members of a religion as reflecting poorly on their religious beliefs. *See Harris*, 448 U.S. at 319. In this case, the Ordinance's principal effect is not to endorse a religion, but simply to bolster local anti-discrimination laws.[4] Any coincidental reference to a shared phenomenon (such as caste) is secondary, if not wholly, immaterial. Accordingly, Plaintiff lacks standing to assert a Free Exercise challenge to the Ordinance.

### ii. *14th Amendment Standing*

Second, Plaintiff contends that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it "unfairly singles out and targets" and "treat[s] disparately people based on their ancestry, creed, national origin, and religion." Dkt. # 1 ¶ 17–23.

---

[4] The anti-caste thrust of the Ordinance evokes the statement of John Marshall Harlan in *Plessy v. Ferguson* that there is no caste in the United States, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting), as well as statements by framers of the Fourteenth Amendment that the amendment was designed to prohibit practices that reduce groups to the position of a lower caste. *See* Cong. Globe, 39th Cong., 1st Sess. 674 (1866) (remarks of Senator Sumner) (the proposed amendment would abolish "oligarchy, aristocracy, caste, or monopoly with particular privileges and powers.") American civil rights jurisprudence is deeply familiar with notions of anti-caste legislation, and it would be anachronistic to suggest that modern anti-discrimination laws cannot rediscover these historical practices or that doing so necessarily refers to contemporary (religious) usages of the term.

ORDER - 5

Equal protection analysis focuses on whether the government has classified individuals on the basis of impermissible criteria. Governmental actions that classify persons by race or that are facially neutral but motivated by discriminatory racial purpose are subject to strict judicial scrutiny. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 230, (1995); *see also Washington v. Davis,* 426 U.S. 229, 247 (1976) (describing the notion of a disparate impact from a facially neutral statute). However, legislative classifications typically survive judicial scrutiny so long as they are *rationally* related to a *legitimate* governmental interest. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985).

Under these guiding principles, the Seattle City Ordinance easily avoids strict scrutiny. Nowhere does the text of the Ordinance make use of prohibited classifications. Rather, the Ordinance is facially neutral and of general applicability. Moreover, wholly absent from Plaintiff's complaint are any facts suggesting that the legislative drafters were actually motivated by racial or ethnic animus. *See generally* Dkt. # 1. Further to the point, Plaintiff's complaint does not plausibly allege that the City of Seattle has applied the Ordinance in a discriminatory manner. *Id.* Nor does it suggest *any* enforcement has occurred pursuant to the Ordinance. *Id.*[5]

Finally, the Ordinance easily passes constitutional muster given its status as a legislative enactment which is rationally related to a legitimate governmental interest of preventing discrimination. *See E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362, 1368 (9th Cir. 1986) (holding that Title VII's purpose to end discrimination is equally if not more compelling than other interests that have been held to justify legislation that burdened the exercise of religious convictions) (citing *Braunfeld v. Brown*, 366 U.S. 599, 606 (1961)); *see also Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) ("Under rational basis review, the Court determines

---

[5] In addition, the Court notes that mere speculation does not suffice to render a matter justiciable under the Equal Protection Clause. *See e.g., Citizens for Fair Representation v. Padilla*, 815 F. App'x 120, 123 (9th Cir. 2020) (holding that the plaintiffs lacked standing to assert an Equal Protection claim because they made only speculative allegations regarding unknown future actions and failed to show a concrete harm based on race).

ORDER - 6

1  whether governmental action is so arbitrary that a rational basis for the action <u>cannot even be</u>
2  <u>conceived</u> *post hoc*.") (emphasis added); *SmithKline Beecham Corp. v. Abbott Lab'ys*, 740 F.3d
3  471, 481 (9th Cir. 2014) (describing rational basis review as evaluating the "essence" of the
4  law.).  It would work a great irony for an anti-discrimination Ordinance that is *de jure* subsumed
5  within the current Equal Protection framework to be found unconstitutional under that same
6  provision. Finally, given that the Ordinance neither discriminates on its face nor runs afoul of the
7  discriminatory *impact* and *intent* principles undergirding the Fourteenth Amendment, the Court
8  need only assess whether Plaintiff's remaining argument is sufficient to confer standing.

9       In their response briefing, Plaintiff argues that the specter of enforcement under the
10  Ordinance is sufficient to lead to "loss of . . . *reputation* . . . ." Dkt #13 at 23 (emphasis added).
11  Plaintiff thus reiterates their First Amendment injury, namely that the Ordinance produces
12  reputational harms.  But abstract stigmatic injuries are insufficient to confer standing under the
13  Fourteenth Amendment.  *See Allen v. Wright*, 468 U.S. 737, 755 (1984); *see also Kumar v.*
14  *Koester*, No. 2:22-cv-0755-RGK-MAA, 2023 WL 4781492, at *3 (C.D. Cal. 2023) (Hindu
15  university professors lacked standing to assert an equal protection challenge to a university's
16  antidiscrimination policy when they merely alleged that the policy impermissibly stigmatized
17  Hindu practitioners).  The injury of stigma confers standing "only to those persons who are
18  personally denied equal treatment [by the challenged discriminatory conduct]."  *Heckler v.*
19  *Mathews*, 465 U.S. 728, 739–40 (1984).

20       Fundamentally, Plaintiff has failed to show a disparate impact or conduct motivated by
21  racial or ethnic animus.  Accordingly, he fails to set forth factual allegations sufficient to furnish
22  standing.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("[I]t is the burden of the
23  'party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that
24  he is a proper party to invoke judicial resolution of the dispute.")

25    **III.**    **CONCLUSION**
26       For the foregoing reasons, Defendants' motion to dismiss Dkt. # 11 is **GRANTED**.

ORDER - 7

1  Plaintiff's complaint is **DISMISSED** with prejudice and without leave to amend, as such
2  amendment would be futile. *See Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir.
3  1999).

5  Dated this 8th day of March, 2024.

The Honorable Richard A. Jones
United States District Judge

ORDER - 8