**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ABHIJIT BAGAL**, <br><br> Plaintiff, <br><br> v. <br><br> **RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY,** *et. al.*, <br><br> Defendants. | Civil Action No. 24-11440 (ZNQ) (JBD) <br><br> **OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss the First Amended Complaint filed on March 24, 2025, by Defendants Rutgers, the State University of New Jersey ("Rutgers"), Jonathan Holloway, Jeffrey Robinson, Enobong (Anna) Branch, Jacqueline S. Mattis, Lucille Foster, Corrine Castro, and Audrey Truschke (collectively, "Defendants"). ("Motion", ECF No. 20.)  In support of their Motion, Defendants filed a Brief in Support (Moving Br., ECF No. 20-1) and the Declaration of Jeffrey Soos (ECF No. 20-2), along with five exhibits attached to the Soos Declaration.  (Soos Exs. 1-5, ECF Nos. 20-3–7.)  On May 7, 2025, *pro se* Plaintiff Abhijit Bagal ("Plaintiff") filed an Opposition to the Motion (Opp'n. Br., ECF No. 24), to which Defendants replied.  (Reply, ECF No. 25.)   On June 4, 2025, Plaintiff filed a Notice of Supplemental Authority.  (ECF No. 26.)

1

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Defendants' Motion.

I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

During labor union negotiations in 2023, Rutgers agreed to form a joint Task Force to examine issues of potential caste discrimination impacting students and union members.[1] The Task Force was co-chaired by Defendant Professor Audrey Truschke ("Truschke"), who according to Plaintiff, "has a well-documented history of discriminatory animus towards the Hindu religion and has engaged in anti-Hindu hate speech and Hinduphobia on numerous occasions." (First Amended Complaint "FAC" ¶ 37.) In August 2024, the Task Force released a report (the "Report") where it recommended that Rutgers include the term "caste" as a protected category in Rutgers's Policy on Discrimination and Harassment (the "Policy").[2] (FAC ¶¶ 6, 35; *see also* Report, Soos. Ex. 1.) In the Report, the Task Force defined caste as "an inherited and immutable social hierarchy with uneven power relations between groups." (Report at 11.) According to Plaintiff, the Report is based on fraudulent caste data that was used to justify the inclusion of "caste" as a protected category to target and discriminate against Hindus at Rutgers. (FAC ¶ 38.) Notably missing from the Report however is any indication that caste-based discrimination is solely linked to Hinduism.

---

[1] *See University January 13, 2025 Response to Task Force on Caste Discrimination Report*, University Labor Relations Updates and Announcements, https://laborrelations.rutgers.edu/updates-announcements (last visited September 29, 2025). The Court may take judicial notice of information published to government websites on a motion to dismiss without converting it into a motion for summary judgment. *See Hafez v. Equifax Info. Servs., LLC*, 666 F.Supp.3d 455, 457 n.2 (D.N.J. 2023).

[2] The Court considers the contents of the Report that is attached as Exhibit 1 to the Declaration of Jeffrey Soos. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiff's claims are based on the Report and the Task Force's recommendation to include the term "caste" to Rutgers's Policy. The document is undisputedly authentic, and Plaintiff has not suggested otherwise in any of his filings. Given that the Report is "an undisputedly authentic document" and the "Plaintiff's claims are based on the document," the Court does not need to convert Defendant's Motion to Dismiss into a Motion for Summary Judgment. *Id.*

Rather, the Task Force explicitly claims that caste-based discrimination occurs across multiple religions, including Christians, Muslims, Sikhs, and Jews. (Report at 19.)

Following the release of the Report, on September 25, 2024[3], Plaintiff, a North Carolina resident, enrolled in Rutgers's online course titled "DEI for Public Managers." (Moving Br. at 8, FAC ¶¶ 9, 14.) Plaintiff does not allege to have ever been physically present on Rutgers's campus or to have discussed the Report with any Rutgers students or faculty. Nor does Plaintiff allege to have taken any classes with Truschke. On January 13, 2025, Rutgers declined to add the term "caste" to the Policy, instead "determin[ing] that current university policy and protected class categories provide protections against caste discrimination."[4] Specifically, Rutgers determined that the Policy's prohibition of discrimination based on religion, ancestry, national origin, and race already prohibit caste-based discrimination.[5] Although Rutgers did not amend its Policy, Plaintiff claims the Report discriminates against Hindus and individuals of Indian and South Asian descent at Rutgers and has resulted in Plaintiff abstaining from practicing his religious beliefs. (*See, e.g.,* FAC ¶ 118.) Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that (1) Plaintiff lacks standing; and in the alternative, (2) Plaintiff's claims fail as a matter of law. (Moving Br. at 2–6.)

---

[3] Plaintiff's FAC does not include the date he enrolled in this course. The Court includes this date only for background purposes and does not rely on it for purposes of deciding Defendants' Motion.

[4] *See University January 13, 2025 Response to Task Force on Caste Discrimination Report*, University Labor Relations Updates and Announcements, https://laborrelations.rutgers.edu/updates-announcements (last visited September 29, 2025).

[5] *Id.*

3

## II. LEGAL STANDARD

### A. RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction because a party lacks standing. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Two types of challenges can be made under Rule 12(b)(1): a facial attack or a factual attack. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citation modified). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pa.*, 757 F.3d at 358 (citation modified). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (citation modified).

### B. ARTICLE III STANDING

"Article III of the United States Constitution limits the judicial power to the adjudication of 'cases' and 'controversies.'" *Const. Party of Pa.*, 757 F.3d at 356–57. To that end, a litigant must have standing to bring his claims. *See Adam v. Barone*, 41 F.4th 230, 233 (3d Cir. 2022). Standing requires a plaintiff to demonstrate three familiar elements: (1) an injury in fact; (2)

4

causation; and (3) redressability. *See Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 218 (3d Cir. 2023). The injury in fact must be "concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)). An injury is imminent if it is "certainly impending" or if there is "a substantial risk that the harm will occur." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). However, litigants cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 416 (2013).

The second element, causation, requires the injury to be "fairly. . .trace[able] to the challenged action of the defendant, and not. . .th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). Lastly, the injury must be "legally and judicially cognizable." *United States v. Texas*, 599 U.S. 670, 676 (2023) (citation omitted). "That requires, among other things, that the dispute is traditionally thought to be capable of resolution through the judicial process—in other words, that the asserted injury is traditionally redressable in federal court." *Id.* (citation modified). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561; *see also Rd.-Con, Inc. v. City of Phila.*, 120 F.4th 346, 354 (3d Cir. 2024) ("The plaintiff bears the burden of showing these three elements. . .and likewise must demonstrate standing separately for each form of relief sought.").

### III. DISCUSSION

Defendants argue that Plaintiff does not have standing to bring any of his claims.[6] (Moving Br. at 14.) In doing so, Defendants argue that Plaintiff alleges two distinct injuries in the FAC: (1)

---

[6] Plaintiff brings claims under Title VI of the Civil Rights Act, the First Amendment, the Fourteenth Amendment, 42 U.S.C. § 1985(3), 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination.

5

Defendants discriminated against Plaintiff for his religious beliefs because the Report connects an oppressive caste system with Hinduism; and (2) Plaintiff has refrained from engaging in certain religious activities and from discussing his religious beliefs in class. (*Id.* at 15.) Defendants argue that Plaintiff was only a remote participant in an online certificate program, so he has not suffered any concrete injury as a result of the Report's publication, and that Plaintiff's allegations of harm to other Hindu students at Rutgers is improper. (Moving Br. at 15–16.) Defendants further argue that even if Plaintiff had an injury in fact, there is no causal connection between the alleged injuries and Defendants' conduct because the Report was a non-binding recommendation. (*Id.* at 17.) Moreover, Defendants argue that Plaintiff's injuries cannot be redressed by this Court because Defendants did not implement any policy changes in response to the Report and do not intend to do so in the future. (*Id.* at 18.)

Rather than address these arguments, Plaintiff's Opposition is full of generalized grievances against Rutgers, Truschke, and the data that the Report was based on, none of which relate to how Plaintiff himself has been injured by Defendants' purported conduct. (*See* Opp'n. Br. at 6 (discussing unrelated civil rights cases against Rutgers); Opp'n. Br. at 10 (stating that the term "caste" is a "highly insulting slur like the 'n-word'"); Opp'n. Br. at 18–19 (arguing the Report relies on data that peddles a narrative of pervasive caste-based discrimination in the United States)) Buried within these general grievances, Plaintiff only conclusory states how he has personally been harmed, arguing that the Report targets Hindus and is unconstitutionally vague, that Rutgers has created a hostile school environment for Hindus, and that Plaintiff has had to refrain from certain religious activities.

Given that Defendants attached the signed Declaration of Jeffrey Soos to its Motion, the Court will consider the Motion to be a factual challenge to Plaintiff's standing. *See Davis*, 824

6

F.3d at 346. The Court will now review Plaintiff's alleged injuries arising under the First Amendment, Fourteenth Amendment, and other anti-discrimination laws.

### C.    FIRST AMENDMENT STANDING

#### 1.    Free Exercise Clause

Plaintiff brings a claim under 42 U.S.C. § 1983, alleging that Defendants are violating the First Amendment's Free Exercise Clause, which prohibits any policy that acts as restraint on the free exercise of religion. *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 222–23 (1963). Plaintiff argues that inclusion of the word "caste" in the Report ascribes an "oppressive and discriminatory caste system to the entire Hindu religion", caused him to refrain from certain religious activities, and prevented him from expressing his religious beliefs in class out of fear the Report will be enforced against him. (FAC ¶¶ 99, 118–120.) Plaintiff compares himself to the plaintiffs in *Susan B. Anthony List v. Driehaus* and *Ariz. Right to Life Pol. Action Comm. v. Bayless*, in which the Supreme Court and Ninth Circuit, respectively, held that the plaintiffs had standing to bring pre-enforcement claims challenging the defendants' conduct. *(See id.* ¶ 119.)

It is well-established that plaintiffs may "challenge the constitutionality of a regulation before suffering an 'actual' injury arising from enforcement so long as the threatened injury is 'imminent.'" *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023) (quoting *Lujan*, 504 U.S. at 560). And while "chilled speech or self-censorship" can establish an injury in fact, a "plaintiff cannot manufacture standing merely by inflicting harm on himself based on his fears of hypothetical future harm that is not certainly impending." *Id.* at 388 (citation modified). "Rather, a plaintiff's self-censorship confers standing only where it is objectively reasonable and fairly traceable to the challenged regulation." *Id.*

Here, Plaintiff has not pled facts to demonstrate how the Report—which cannot be and will not be enforced—is burdening Plaintiff's ability to exercise his religious rights. The Report was

7

a non-binding recommendation that carries with it no disciplinary weight. And Rutgers expressly declined to include the term "caste" in its Policy, so the complained of governmental action apparently burdening Plaintiff's religious activities does not exist. Stated differently, Plaintiff's self-censorship is based on "hypothetical future harm that is not certainly impending." *Id.*; *see also Clapper*, 568 U.S. at 419 (holding that plaintiffs cannot "establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on their part"); *Kumar v. Koester*, 131 F.4th 746, 754 (9th Cir. 2025) (dismissing a free exercise claim for lack of standing where appellant did not demonstrate that the inclusion of the word "caste" in a university anti-discrimination policy actually burdened appellant's ability to exercise his religion). Accordingly, Plaintiff lacks Article III standing to bring his Free Exercise claim.

2. Establishment Clause

Plaintiff also brings a claim under the Establishment Clause, alleging that "Defendants, through the caste report and elsewhere, have unilaterally determined that the contours of Hinduism include caste and an oppressive and discriminatory caste system." (FAC ¶ 178.) Plaintiff argues that even though the term "caste" is facially neutral, the Report's references to Hinduism and Truschke's past statements demonstrate that the Report was actually intended to target Hinduism. (Opp'n. Br. at 16.) Although not clearly stated, Plaintiff's alleged injury appears to be the stigma associated with his membership in a religion that the Report has characterized and disapproves of.

"In a case arising from an alleged violation of the Establishment Clause, a plaintiff must show, as in other cases, that he is 'directly affected by the laws and practices against which [his] complaints are directed.'" *Trump v. Hawaii*, 585 U.S. 667, 698 (2018) (quoting *School Dist. of Abington Township*, 374 U.S. at 224 n. 9) (alternation in original). This can be shown in various ways, such as through the denial of a benefit because of an individual's religion or by being forced

8

to recite a mandatory prayer in a public school. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129–30 (2011); *see also Hassan v. City of New York*, 804 F.3d 277, 289–91 (3d Cir. 2015) (holding plaintiff had standing to challenge public surveillance laws that targeted Muslims). While "stigma can be a cognizable Establishment Clause injury" it must still "be concrete and particularized." *Barber v. Bryant*, 860 F.3d 345, 353 (5th Cir. 2017).

Here, Plaintiff has not sufficiently pled facts to show that he is "directly affected" by the alleged stigmatization created by the Report. *Trump*, 585 U.S. at 698. Plaintiff is a North Carolina resident and only attended one online course at Rutgers. (FAC ¶¶ 14–15.) Plaintiff fails to even allege that the Report was discussed in his class or that he ever discussed the Report with any other students or faculty. Moreover, the Report was a non-binding recommendation and Rutgers expressly stated that it did not agree with or adopt the conclusions of the Report. (Soos Ex. 1 at 1.)

In any event, the Report did not establish any official policy or position of Rutgers. Plaintiff cannot manufacture standing by alleging a stigmatic injury, when that alleged stigmatic harm is not objectively reasonable based on the allegations. *See Clapper*, 568 U.S. at 418 (holding that plaintiff's subjective fears could not be substituted for a claim of a present objective harm). Simply being offended by the Report and Truschke's alleged statements connecting Hinduism to the caste system are insufficient, without more, to confer Plaintiff with standing to bring his Establishment Clause claim. *See American Legion v. American Humanist Association*, 588 U.S. 29, 80 (2019) (Gorsuch, J., concurring) (holding that offense alone is insufficient to qualify as a "concrete and particularized" injury); *see also Hindu American Foundation, Inc. v. Kish*, Civ. No. 22-1656, 2025 WL 2029733, at *11 (E.D. Cal. July 21, 2025) (holding that plaintiffs' allegations of "an abstract stigmatic injury" based on California's Civil Rights Division's enforcement of

9

caste-based discrimination against others was insufficient to establish standing under the Establishment Clause). Given that Plaintiff has not even pled facts to demonstrate that he discussed the Report with anyone or was physically present on Rutgers's campus, he has failed to establish how he has been "directly affected" by the publication of the Report. *See Trump*, 585 U.S. at 698. Thus, Plaintiff does not have Article III standing to bring his Establishment Clause claim.

### D.     FOURTEENTH AMENDMENT STANDING

#### 1.     Equal Protection Clause

Plaintiff also alleges that Defendants have violated the Equal Protection Clause of the Fourteenth Amendment because they do not "enforce its anti-discrimination policies evenly and uniformly" and "selectively target[] Hindu Americans." (FAC ¶ 186.) Moreover, Plaintiff asserts that the Report has "created de facto suspect classes" that target Hindus and individuals of Indian and South Asian descent. (FAC ¶ 188.)

In the Equal Protection context, the Third Circuit has held that a "'discriminatory classification is itself a penalty,' and thus 'qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake.'" *Road-Con, Inc.*, 120 F.4th at 358 (quoting *Hassan*, 804 F.3d at 290). But "an injury resulting from governmental racial discrimination 'accords a basis for standing only to those persons who are *personally* denied equal treatment by the challenged discriminatory conduct.'" *Doe ex rel. Doe v. Lower Merion School Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)) (emphasis added). In other words, for a plaintiff to have standing he must demonstrate that he has personally been denied equal treatment because of governmental discrimination. *See id*.

Here, the Court holds that Plaintiff has not pled facts to demonstrate that Defendants enforce its anti-discrimination policies in a way that targets Hindu Americans, let alone Plaintiff.

As an initial matter, Rutgers did not adopt the Report's recommendations so it not clear what policy Plaintiff believes is being unequally enforced against him. If Plaintiff is suggesting that the Report can be enforced against him, that is plainly contradicted by Rutgers's announcement in which it declined to include the term "caste" to its Policy. As has been explained, the Report was a non-binding recommendation that Defendants cannot enforce. Regardless, Plaintiff has not pled facts demonstrating that any policy of Rutgers is being enforced against him in a discriminatory manner. Without more, Plaintiff cannot establish that he has standing to bring his Equal Protection claim. *See Hindu American Foundation, Inc.*, 2025 WL 2029733, at *14 (finding that plaintiffs lacked standing to bring Equal Protection claim where they could not show how the complained of policy was being applied in a discriminatory manner).

Insofar as the Plaintiff alleges he has suffered a stigmatic injury, "such injuries 'accord[] a basis for standing only to those persons who are *personally denied* equal treatment by the challenged discriminatory conduct[.]" *Hindu American Foundation, Inc.*, 2025 WL 2029733, at *14 (quoting *Allen v. Wright*, 468 U.S. 737, 738 (1984)) (alterations in original); *see also Kumar v. Koester*, 683 F. Supp. 3d 1108, 1114–15 (C.D. Cal. 2023) (finding that Hindu university professors lacked standing to assert an equal protection challenge to an antidiscrimination policy's use of the term "caste" where the plaintiffs merely alleged that "the Policy impermissibly stigmatizes individuals of South Asian descent and Hindu practitioners" and that "the policy could be enforced unevenly"), *aff'd and remanded*, 131 F.4th 746 (9th Cir. 2025). Plaintiff's abstract claim of stigmatic harm is insufficient to confer him standing. *Allen v. Wright*, 468 U.S. 737, 755 (1984). Given that Plaintiff has not pled facts to demonstrate how he has personally been denied equal treatment by any of the Defendants, he does not have standing to bring an equal protection claim.

11

2. Due Process Clause

Plaintiff further contends his Due Process rights have been violated because "[t]he caste report is so vague that people of ordinary intelligence do not know what conduct is prohibited by the addition of caste to Rutgers Policy." (FAC ¶ 195.) He further claims that the addition of the term "caste" to Rutgers's Policy will cause him to live in fear of being disciplined for discrimination. (FAC ¶ 198.)

The Court reiterates that the Report was a non-binding recommendation and does not prohibit any conduct. Rutgers cannot enforce the Report and has no intention of adding the term "caste" to its Policy. (Soos Ex. 2.) And even if Plaintiff had concerns that Defendant could enforce the Policy (which does not include the "caste" language) or another policy against him, Plaintiff has not pled facts to demonstrate that he intends to engage in caste-based discrimination. Rather, Plaintiff expressly denies engaging in discrimination of any kind and alleges that the Hindu religion does not include or endorse a discriminatory caste system. (FAC ¶ 101.) Accordingly, Plaintiff's alleged fear of enforcement is imaginary and has no realistic possibility of occurring. *See Greenberg*, 81 F.4th at 386 (finding that plaintiff failed to establish an injury in fact, as the policy prohibited nothing plaintiff intended to do); *Kumar*, 131 F.4th at 753 (holding that litigants "fear of prosecution must not be imaginary or wholly speculative" for them to have standing). Because Plaintiff has not pled facts to demonstrate that his alleged fear of enforcement is imminent, his Due Process claim is also dismissed for lack of Article III standing.

E.     **REMAINING CLAIMS**

Plaintiff's remaining claims are brought under Title VI (Count One), 42 U.S.C. § 1985(3) (Count Six), 42 U.S.C. § 1981 (Count Seven), and N.J.S.A. 10:5-1 (Count Eight). Because these claims all generally allege the same injury (i.e., discrimination), the Court will address them together. *See Quick v. Township of Bernards*, Civ. No. 17-5595, 2024 WL 4024097, at *6 n.5

12

(D.N.J. Aug. 30, 2024) (citing *Finkelman v. Nat'l Football League*, 810 F.3d 187, 203 (3d Cir. 2016)).

Plaintiff generally alleges that Defendants are discriminating against him and other students because of their "actual and/or perceived Hindu ancestry, race, ethnic characteristics, religion, or national origin." (FAC ¶ 155.) According to Plaintiff, this racial discrimination affords him with an injury that satisfies Article III's standing requirements. (Opp'n. Br. at 23.)

While discrimination of any kind can certainly satisfy the "injury in fact" requirement of standing, Plaintiff has not pled facts to demonstrate how he has personally been discriminated against. For example, he claims that "while Hindu students can in theory discuss their beliefs and religious practices, they can do so only by renouncing or pretending to renounce an immutable aspect of their identify or by remaining silent." (FAC ¶ 158.) But allegations about injuries incurred by *other* students are not "concrete and particularized" with respect to Plaintiff and do not confer *him* with standing. *See Associated Builders & Contractors Western Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023) (holding that an injury "to some third party" does not satisfy the injury in fact requirement).

Plaintiff's barebone allegations about discrimination he has personally faced are similarly insufficient to confer him with standing. The FAC alleges that "derogatory inquiries" have been made regarding Plaintiff's ethnicity and religious customs and that unnamed individuals speak to Plaintiff with "moral indignation, often coercing him to denounce the Hindu caste system." (FAC ¶¶ 126, 128.) But notably absent from these allegations is any mention of who these individuals are or whether these alleged incidents have any connection to Defendants. Accordingly, Plaintiff has not pled facts to demonstrate a causal connection between his alleged injury and the Defendants' conduct.

Plaintiff also alleges that "[i]n the Rutgers DEI classes, asserting opposition to a hypothetical caste discrimination system has become the sole means by which Plaintiff is deemed worthy to express an opinion, and its serves as an ongoing effort to affirm Plaintiff's innocence." (FAC ¶ 129.) However, Plaintiff has not pled any facts that would provide context for this allegation, such as what the question was, who asked the question, or whether the "hypothetical caste discrimination" scenario had any connection to Hinduism. Moreover, it is not clear how asserting opposition to a hypothetical caste system can form the basis of Plaintiff's injury when Plaintiff himself has asserted that it is his "sincerely held religious belief that the Hindu religion in no way includes or endorses an oppressive and discriminatory caste system." (FAC ¶ 101.) Given that Plaintiff has denounced caste-based discrimination, he cannot claim to have an "injury in fact" for apparently confirming that view in his class.

Plaintiff also alleges that "Rutgers selectively applies (or plans to apply) or enforces (or plans to enforce) its caste report, student handbooks, guidelines, policies, procedures, course catalogs, registration materials, bulletins, circulars, and regulations in bad faith and in a discriminatory way." (*Id.* ¶ 213.) But as the Court has already explained, the Report is a non-binding recommendation that was not adopted by Rutgers. As such, Plaintiff's alleged fear of discrimination based on the Report is simply not plausible and he cannot manufacture Article III standing with hypothetical allegations of discriminatory enforcement. *See Clapper*, 568 U.S. at 416 (2013). Because Plaintiff has not pled facts to demonstrate an injury in fact that can be fairly traceable to Defendants' conduct, the remainder of his claims must also be dismissed.

### IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss without prejudice based on Plaintiff's lack of standing. Under the circumstances, the Court finds

that further amendment to the Complaint would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Accordingly, Plaintiff will not be granted leave to amend the First Amended Complaint.  An appropriate Order will follow.


Date: October 14, 2025

                                         s/ Zahid N. Quraishi_____
                                         **ZAHID N. QURAISHI**
                                         **UNITED STATES DISTRICT JUDGE**